# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| In re:<br><br>**PAUL J. FOLKMAN and**<br>**HSUEH MEI FOLKMAN,**<br><br>**Debtors.** | No.  20-40864-btr-7<br>Chapter 7 |
| **JEFFREY BLANCHARD and JANINE**<br>**BLANCHARD**,<br><br>**Plaintiffs,**<br><br>**V**<br><br>**PAUL J. FOLKMAN and HSUEH MEI**<br>**FOLKMAN a/k/a MICHELLE FOLKMAN**<br>**a/k/a HSUEH MEI LEE, individually,**<br>**FOLKMAN DEVELOPMENT**<br>**CORPORATION and NRT NEW**<br>**ENGLAND LLC d/b/a COLDWELL**<br>**BANKER RESIDENTIAL BROKERAGE,**<br><br>**Defendants.** | **ADVERSARY NO. 20-04083** |

## AMENDED COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE AND DISCHARGEABILITY OF PLAINTIFFS' CLAIMS PURSUANT TO SECTIONS 523 AND 727 OF THE UNITED STATES BANKRUPTCY CODE

Jeffrey Blanchard and Janine Blanchard ("**Plaintiffs**"), pursuant to Sections 523 and 727 of the United States Bankruptcy Code (11 U.S.C. §§ 101, *et seq*., the "**Bankruptcy Code**"), Rules 7001, *et seq.* of the Federal Bankruptcy Rules and this Honorable Court's *Order* dated March 10, 2022 [ECF Docket No. 35], file this *Amended Complaint* objecting to discharge (generally) and the dischargeability of Plaintiffs' claims (specifically). In support thereof, Plaintiffs would respectfully show as follows:

## Introductory Statement

Plaintiffs are the innocent victims of a fraudulent real estate scheme involving the the residential dwelling located at 190 Winter Street, Mansfield, Massachusetts 02048 (the "**Property**"). That scheme was perpetrated by Paul J. Folkman and Hsueh Mei Folkman a/k/a Michelle Folkman a/k/a Hsueh Mei Lee (collectively "**Debtors**") by and through Folkman Development Corporation and CFL Development LLC (collectively "**Debtors' Alter Egos**") (Debtors and Debtors' Alter Egos, collectively, the "**Debtor Defendants**") and with the aid and assistance of NRT New England LLC d/b/a Coldwell Banker Residential Brokerage ("**Debtors' Agent**" or "**Coldwell**") (the Debtor Defendants, Debtors' Agent and Coldwell, collectively, "**Defendants**"). As a direct and proximate consequence of the collective fraudulent conduct of the Debtor Defendants and Coldwell, Plaintiffs' son became extremely ill and Plaintiffs incurred expenses in excess of $164,923.61 to diagnose and remediate latent defects in the Property. More specifically, the Debtor Defendants and Coldwell acted together to construct, renovate, repair, manage, market and sell the Property. Thereafter, Plaintiffs experienced symptoms of and subsequently discovered a myriad of latent defects, including but not limited to: burst pipes, improper foundation water proofing, an abandoned and buried in-ground swimming pool and a significant presence of mold in the main house and the in-law apartment above the detached garage. By the concerted statements and actions of the Debtor Defendants and Coldwell, Plaintiffs were lured into a false sense of security concerning the condition of the Property and, as such, would not have proceeded in the same manner.

In addition, Plaintiffs object to the dischargeability of their claims against Debtors because their claims arise as a result of Debtors' actual fraud, false pretenses and fraudulent misrepresentations. Plaintiffs object to Debtors' discharge because Debtor is not an honest debtor

deserving of a discharge in bankruptcy as evidenced by, among other things, Debtors' domicile in Massachusetts until February 14, 2019, Debtors' failure to disclose all property in which Debtors have an interest, Debtors' false oaths, testimony, and claims in Debtors' bankruptcy case, Debtors' failure to possess, produce, maintain and preserve adequate records whereby Debtors' true financial condition and transactions can be ascertained, and Debtors' fraudulent transfers of property, inclusive of proceeds from the sale of the Property, prior to the filing of Debtors' bankruptcy petition.

## I.    PARTIES, JURISDICTION AND VENUE

1.  Plaintiffs, Janine Blanchard and Jeffrey Blanchard, are individuals residing at 190 Winter Street, Mansfield, Massachusetts 02048. Plaintiffs are creditors and parties-in-interest in the above-captioned bankruptcy case, having filed a *Proof Of Claim* in the amount of $225,000.00 on July 21, 2020, which claim has been registered on the claims register in this case as Claim No. 14.

2.  Debtors, Paul J. Folkman ("**Folkman**") and Hsueh Mei Folkman a/k/a Michelle Folkman a/k/a Hsueh Mei Lee ("**Lee**") are individuals who reside at 1013 Royal Oaks Drive, McKinney, Texas 75072. Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 27, 2020, in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division. On July 17, 2020, the Bankruptcy Court endorsed the *Agreed Order Granting Motion To Extend Time To Object To Discharge And Dischargeability* granting Plaintiffs an extension of time in which to file this *Complaint* "to and through August 31, 2020."  Debtor may be served with process by serving his attorney of record in this bankruptcy case, William J. Collins, Esq., Collins & Arnove, 555 Republic Drive, Suite 200, Plano, Texas 75074.

3. Defendant, Folkman Development Corporation (the "**Corporation**"), is a Massachusetts corporation with a principal place of business at the Property. Lee is the President and Folkman is the Treasurer and Secretary; both are Directors. Debtors' state their "% of ownership:" in the Corporation is "100%" and that "1103 [sic] Royal Oaks McKinney, Tx 75070" is the Corporation's "Business Address" (see *Statement Of Financial Affairs For Individuals Filing For Bankruptcy* at ¶ 19 and ¶ 27). Folkman may be served with process by serving its Registered Agent at 125 High Street #10, Mansfield, Massachusetts 02048 or by mail addressed to Lee at 1013 Royal Oaks Drive, McKinney, Tx 75070.

4. Defendant, NRT New England LLC d/b/a Coldwell Banker Residential Brokerage ("**Coldwell**"), is a Massachusetts limited liability company with a principal place of business at 100 Fifth Avenue, Waltham, Massachusetts 02451; and, a licensed Massachusetts Real Estate Brokerage, License No. 8064. Coldwell may be served with process by serving its registered agent, Corporate Creations Network Inc. at 10 Milk Street #1055, Boston, Massachusetts 02108, by mail addressed to NRT New England LLC at 100 Fifth Avenue, Waltham, Massachusetts 02451 or Corporate Creations Network Inc. 10 Milk Street #1055, Boston, Massachusetts 02108, or with assent of counsel, by serving its attorneys, Alexandra R. Power, Esq. and Jennifer C. Sheehan, Esq., Hamel Marcin Dunn Reardon & Shea, PC, 350 Lincoln Street, Suite 1101, Hingham, Massachusetts 02043 in an agreed manner.

5. This Court has jurisdiction over the parties and this controversy under 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J).

6. Venue of this proceeding is proper under 28 U.S.C. §1409.

## II.  FACTUAL BACKGROUND

### A.  FACTS RELEVANT TO THE DEBTOR DEFENDANTS

7.  On <u>September 1, 1983</u>, The Folkman Company, Inc. was organized as a Massachusetts corporation with Folkman as the President, Treasurer, Secretary, Director and Registered Agent. Until its involuntarily dissolution on June 28, 2019, Folkman Company, Inc. had a principal place of business at 190 Winter Street, Mansfield, Massachusetts 02048.

8.  Between <u>August 3, 1984</u> and <u>November 2, 2018</u>, Folkman maintained a Type B Broker's license issued by the Massachusetts Board of Registration of Real Estate Brokers and Salespersons, License No. 126705. Folkman's license expired on November 2, 2018.

9.  The Corporation and/or Debtors, individually, own, maintain, manage or otherwise control the website www.folkmandevelopment.com and the content contained therein. A true and accurate copy of website printout attached hereto, made a part hereof and marked **Exhibit "A"**.

10. Folkman "has 40 years of experience in all aspects of real estate planning and development . . . has participated in the development of over 1000 residential units and 30 miles of roadways . . . has B.Sc. and M.Sc. degrees from the University of Vermont with specialties in environmental studies, planning, water resources and water permitting."

11. Folkman conducts his business under ". . . The Folkman Company, Inc., Folkman & Zola Builders, Inc. ("**Folkman & Zola**"), and Folkman Development Corporation along with numerous joint ventures under other entities." See **Exhibit "A"**.

12. Lee holds a Type S real estate salesperson's license, issued on September 11, 2017, by the Massachusetts Board of Registration of Real Estate Brokers and Salespersons, License No.

9558014. Lee's license expired on November 6, 2019. Lee has sold "over 1000 homes". See **Exhibit "A"**.

13. The Corporation holds itself out as ". . . an independently owned, boutique real estate brokerage . . ." offering ". . . comprehensive residential . . . solutions . . ." including ". . . investment sales. . . (sales and leasing)," but is not a licensed Massachusetts Real Estate Brokerage. See **Exhibit "A"**.

14. The Corporation's ". . . SERVICES AND CAPABILITIES" by way of ". . . DEVELOPMENT . . ." are in the nature of ". . . design, permit, build and market. . ." See **Exhibit "A"**.

15. On <u>August 3, 1984</u>, in consideration of $35,000.00, Folkman and his then wife, Jane W. Folkman, became the record owners, as tenants by the entirety, of the real property known as and numbered (Lot 6) Winter Street, Mansfield, Massachusetts 02048 by virtue of a *Deed* with *Quitclaim Covenants* from Evelyn I. Allen, Trustee of Allen Trust, recorded with Bristol County Northern District Registry of Deeds in Book 2536, Page 90.

16. <u>Between August 3, 1984 and April 2, 1985</u>, Folkman built "all buildings and improvements thereon". More specifically, a "60' x 52 Cape L Shaped . . . [n]ew building . . . [o]ne family. . . [w]ood frame" with Folkman's company, "The Folkman Co. Inc", designated as the "Contractor".

17. On <u>April 2, 1985</u>, Folkman as both "OWNER" and "APPLICANT" obtained *Building Permit* No. 63 for installation of a "37.5 FT. WIDE BY 16.5 FT. LONG BY 8 FT. IN HEIGHT" inground pool.

18. On <u>March 26, 1986</u>, Folkman as "owner" listed The Folkman Co. Inc. as "contractor" on the *Application For Plan Examination And Building Permit* for the addition of a "2 car garage with 18x26porch [sic]" resulting in issuance of *Building Permit* No. 79.

19. On <u>January 27, 1993</u>, Folkman submitted the *Application for Permit, Exception or Variance* to the Town of Mansfield's Zoning Board of Appeals.

20. On <u>March 10, 1993</u>, the Town of Mansfield Zoning Board of Appeals "unanimously voted to grant a variance to convert existing two-story attached garage into living area and constructing an enclosed addition between two existing structure (house and garage). . ."

21. On <u>May 5, 1993</u>, following the Town of Mansfield's grant of the above-referenced variance, Folkman, as both "APPLICANT" and "OWNER" was issued *Building Permit* No. 1563 for the construction of a "roofed walkway connecting house and garage and convert garage into living area, second floor only".

22. On <u>December 20, 1993</u>, Folkman submitted an *Application For Plan Examination And Building Permit* listing "The Folkman Company, Inc" as the "Applicant (not owner)" <u>and</u> "General Contractor" for the purpose of an "ADDITION" to the Subject Premises, to wit: "finish portions of basement area".

23. On <u>January 4, 1994</u>, Folkman obtained *Building Permit* No. 1924, which listed Folkman as both the "Applicant" and "Owner", in order to "finish portions of basement".

24. On <u>April 5, 2011</u>, after over 18 years of living in the Property and ". . . in full consideration of an advanced distribution of marital assets . . .", Folkman became the <u>sole</u> record owner of the Property by virtue of a *Quitclaim Deed* from himself and his wife, Jane W. Folkman, recorded with Bristol County Northern District Registry of Deeds in Book 19388, Page 244.

25. On <u>April 20, 2018</u>, Defendants' agent, Brookdale Corporation ("**Brookdale**"), was issued *Building* Permit No. A015504 for the purpose of "REMODEL KITCHEN/MASTER BATH/2ND BATH/REPLACE KITCHEN SLIDER".

26. The *Building Permit Application To Construct, Repair, Renovate Or Demolish a One- or Two-Family Dwelling* dated April 14, 2018 lists Dennis Baker as the "Licensed Construction Supervisor" and "Brookdale Corp" as the "Registered Home Improvement Contractor".

27. On <u>May 15, 2018</u>, Brookdale was issued *Building Permit* No. A015569 for the purpose of "STRIP/RE-ROOF".

28. Brookdale agreed with Folkman to act as site supervisor, to allow Folkman to purchase materials from and make charges to accounts at certain of Brookdale's vendors, and to recommend, but not pay sub-contractors.

29. On <u>July 28, 2018</u>, Brookdale withdrew and inactivated *Building Permit* No. A015569 by correspondence to Lee Day, Assistant Building Inspector for the Town of Mansfield.

30. On <u>July 30, 2018</u>, Defendants submitted *Building Permit Application To Construct, Repair, Renovate Or Demolish a One- or Two-Family Dwelling* with a "Brief Description of Proposed Work" as "window siding/finish the other permit # 15504 remodel kitchen/master bath finish only rough completed" and Folkman, as both "*Applicant*" and "*Owner*" was issued *Building Permit* No. A015832 by the Town of Mansfield.

31. *Building Permit* No. A015832 expressly stated "**NON-CONFORMING LIVING SPACE ABOVE FREE STANDING GARAGE NOT ALLOWED**"

## B. FACTS RELEVANT TO COLDWELL AND IMPUTED UPON THE DEBTOR DEFENDANTS

32. In or about August 2018, Coldwell and Deborah Piazza ("**Piazza**") were contacted by the Debtor Defendants about marketing the Property for sale.

33. On or about August 22, 2018, the Debtor Defendants executed a contract with Coldwell, by and through its agent, Piazza, for the exclusive right to sell the Property. At all times relevant hereto, all statements, representations and omissions of or by Coldwell are directly attributable to Piazza and are imputed vicariously upon the Debtor Defendants.

34. Coldwell and Piazza are licensed pursuant to Massachusetts General Laws, Chapter 13, § 56, Chapter 112, §§ 87RR – 87TT, and Title 254 of the Code of Massachusetts Regulations. Coldwell and Piazza owe certain statutory duties of professional conduct, including but not limited to, required annual completion of continuing education courses.

35. On or about August 22, 2018, Coldwell and Piazza executed a contract with the Debtor Defendants to market and sell the Property.

36. On August 31, 2018, Coldwell and Piazza represented the Property as being, among other things, "**COMPLETELY RENOVATED** . . . CUSTOM . . . MAGNIFICENT . . . EXPANSIVE, SUNDRENCHED . . . EXQUISITE . . . **PERFECT** . . . [emphasis added]." A true and accurate copy of the *MLS Listing Sheet* for the Property is attached hereto, made a part hereof and marked **Exhibit "B"**. The *MLS Listing Sheet* reads, in relevant part, "Listing Office: Coldwell Banker Residential Brokerage;" "Listing Agent: Deborah Piazza."

37. Coldwell and Piazza represented the Property:

    a. consisted of ". . . Total **Rooms: 9** . . . **Bedrooms: 5** . . . **Bathrooms 4f** 0h . . . Approx. **Living Area**: **4,043** Sq. Ft. . . . **ADD'L 612** SQ FT IN GUEST STUDIO/SUITE **OVER GARAGE** . . . Disclosures: **NEW** ROOF, SIDING,

WINDOWS, & A/C (2018) . . . ADD'L 1 BEDROOM, 1 BATH W/ KITCHEN GUEST SUITE/IN-LAW STUDIO OVER THE GARAGE. . . 'BUILDERS MODEL HOME'. . . [emphasis added]"; and,

    b. came with a ". . . **ONE YEAR HOME WARRANTY INCLUDED** . . ."

See **Exhibit "B"**.

38. In <u>August 2018</u>, the Town of Mansfield taxed the Property on the basis that it consisted of the following: **6 rooms** (**2 bedrooms**, **2 full** bathrooms, **1 half bathroom** and kitchen), **finished living space** (**3,963** square feet), finished basement (1,200 square feet), unfinished basement (1,084 square feet), an **outbuilding** (**592** square feet) and deck.

39. Coldwell's and Piazza's <u>representations</u> did not disclose the following information:

    a. The identity of the Guarantor;

    b. The properties of the designated product or part thereof covered or excluded from the warranty;

    c. The process the Guarantee must follow before the Guarantor will fulfill obligations under the warranty; and,

    d. The responsibilities of the Guarantor pursuant to the Guarantee.

40. Coldwell and Piazza did not verify the information in ¶39., subparagraph a. through d., of this *Amended Complaint*.

41. Coldwell and Piazza knew any warranty being offered omitted legally required information.

42. Coldwell and Piazza viewed the Property on numerous occasions.

43. Coldwell and Piazza <u>represented</u> information, without independently verifying its veracity.

44. Coldwell and Piazza <u>represented</u> information, knowing its untruth.

45. On December 12, 2018, Plaintiffs submitted to Coldwell and Piazza, an *Offer To Purchase Real Estate* with corresponding *Offer To Purchase Contingency Addendum.*

46. Coldwell and Piazza represented that Lee "had become attached to" and may still intend to live in the Property.

47. On December 13, 2018, in conjunction with their *Offer*; and, believing it to be required as a condition of their *Offer*, Plaintiffs submitted a written letter expressing why they wanted to purchase the Property.

48. On December 14, 2018, Debtors counter signed the *Offer To Purchase*.

49. On December 19, 2018, Plaintiffs completed a home inspection of the Property.

50. Between December 19, 2018, and December 27, 2018, Plaintiffs' real estate agent, Coldwell and Piazza discussed issues raised by the home inspection and negotiated certain repairs, inclusive but not limited to, repairs to the chimney in the main house.

51. On December 28, 2018, Plaintiffs' real estate agent requested an extension in which to execute the applicable *Purchase And Sale Agreement* on account of the extended time required to come to an agreement as to repairs.

52. On January 4, 2019, Plaintiffs' real estate agent forwarded to Coldwell and Piazza, an e-mail thread requesting that Folkman, ". . . contact Bob to work out the details if they don't' [sic] agree with his findings . . ." The "Bob" referenced in the e-mail is Robert Blackman, Inspector of Buildings / Zoning Enforcement Officer for the Town of Mansfield.

53. Plaintiffs, Coldwell, Piazza and the Debtor Defendants were notified by the Town of Mansfield that the kitchen and bathroom above the detached garage and the apartment itself ". . . should be removed to comply. . ." and that ". . . it is required as it sits it is an illegal apartment."

54. Coldwell and Piazza <u>represented</u>, "**ADD'L 1 BEDROOM, 1 BATH W/ KITCHEN GUEST SUITE/IN-LAW STUDIO OVER THE GARAGE**."

55. On January 7, 2019, Plaintiffs executed the *Purchase and Sale Agreement* with *Rider A* (the "**P&S**").

56. The *P&S* included, among other provisions, a paragraph entitled "BROKER AS PARTY," which expressly stated, *inter alia*, that "[Coldwell] . . . become(s) a party hereto, insofar as any provisions of this agreement expressly apply to [Coldwell] . . ."

57. Coldwell, Piazza, nor the Debtor Defendants ensured that the "One-Year Home Warranty," <u>represented</u> by Coldwell and Piazza, was written in, attached to, or in any way incorporated into the *P&S*.

58. ¶23. of *Rider A* to the *P&S* stated, *inter alia*, that ". . . all systems . . . shall be in the same condition at closing as they were on the date of BUYER's inspection (except items of repair/replacement to be performed and/or completed, if any, pursuant to this Agreement) . . ." and "SELLER to maintain property at the same level as at time of offer."

59. On <u>January 8, 2019</u>, Coldwell and Piazza communicated with the Debtor Defendant's legal counsel that there was plumbing work that was required to close out an open permit. Coldwell and Piazza arranged for a plumber and a town plumbing inspector to access the Property to close the permit.

60. Coldwell and Piazza have knowledge, after execution of the *Purchase and Sale Agreement*, of the following: a. the identity of the plumbing inspector; b. the plumber that allegedly performed work at and to the Property; c. the cost and scope of any work completed; d. whether such work was completed in a workmanlike manner; and, whether no work was performed at all.

61. On information and belief, after the *P&S* signing, Coldwell and Piazza learned that a pipe had frozen in the unoccupied apartment above the detached garage.

62. Coldwell and Piazza immediately took steps to have a plumber repair the pipe, replaster, and repaint the wall in front of the pipe, have the carpets professionally cleaned and a fuel company deliver propane to ensure that the temperature remained warm in the unoccupied apartment above the detached garage.

63. On information and belief, Coldwell, Piazza, the Debtor Defendants, nor the alleged plumber obtained a permit from the Town of Mansfield to complete the repairs in the unoccupied apartment above the detached garage.

64. Coldwell and Piazza have knowledge, after execution of the *Purchase and Sale Agreement*, of the following: a. plumbing conditions in the unoccupied apartment above the detached garage; b. the cost and scope of any work completed in or to the unoccupied apartment above the detached garage; c. whether such work was completed in a workmanlike manner; and d. whether no work was performed at all.

65. On February 12, 2019, during a walk-through of the Property, Plaintiffs detected an odor in the unoccupied apartment above the detached garage and made inquiry of Coldwell and Piazza for an explanation. Coldwell and Piazza represented that there had been a small leak in a pipe in the apartment and further represented that the issue had been repaired. Coldwell and Piazza repeatedly represented to Plaintiffs that the leak had been very minor.

66. During the same walkthrough, Plaintiffs also noticed a water stain on a ceiling tile in the finished basement of the main home, as well as water stains on the wall and again made inquiry of Coldwell and Piazza for an explanation. Coldwell and Piazza represented that it

was from a leak in a pipe located in the ceiling and that it would only cost $500.00 to repair the pipe and drywall.

67. Plaintiffs justifiably relied on Coldwell's and Piazza's numerous <u>representations</u> and <u>omissions</u>, wherein they developed a reasonable belief, that 1. water stains observed in the finished basement of the main house were due simply to an easily resolved leaky valve on a pipe; and 2. odors in the unoccupied apartment above the detached garage were merely olfactory remnants from a repaired plumbing issue. Cf. **Exhibit "C"**.

## C. FACTS RELEVANT TO DAMAGES

68. On <u>February 14, 2019</u>, Plaintiffs became the record owners of the Property by virtue of a *Quitclaim Deed* recorded with Bristol County Northern District Registry of Deeds in Book 24940, Page 15. Lee's signature also appears on said *Deed*.

69. Plaintiffs immediately moved into the Property and were required to purchase a dumpster to remove old furniture and other debris left by Debtors in the attic and in the unoccupied apartment above the detached garage.

70. After moving in, Plaintiffs were confronted at the Property by aggressive and agitated individuals looking for Lee stating that they were owed substantial sums of money for work they completed to the Property. Plaintiffs hired a locksmith to change the exterior locks to the Property.

71. On or about <u>February 14, 2019</u>, Plaintiffs' son began to complain of shortness of breath and light headedness. Plaintiffs suspected that their son's complaints coincided with time he was spending in the basement of the Property.

72. On or about <u>March 12, 2019</u>, while investigating another water stain on a wall above the detached garage, Plaintiffs discovered multiple broken and burst pipes in the walls of the

unoccupied apartment over the detached garage. True and accurate copies of photographs attached hereto, made a part hereof and marked **Exhibit "C"**.

73. Between <u>March 15, 2019, and March 17, 2019</u>, Plaintiffs located additional water stains on sub flooring; and, following investigation, observed more damaged pipes and the prevalence of mold.

74. More specifically, Plaintiffs discovered a drywall cut-out hidden behind the apartment's kitchen cabinets secured to the wall with one (1) screw. Behind the dry wall cut out were multiple burst/cut pipes. Plaintiffs also observed water stains on the dry wall behind the kitchen cabinets and mold on the walls behind the kitchen sink. Additionally, mold was observed in the soffit vents behind the walls and on the ceiling and insulation behind the soffit vents.

75. During exploratory demolition in the apartment above the detached garage, Plaintiffs observed a dryer vent hose that was not connected to the exterior of the living space, a heat cord that was wrapped around a PVC pipe in the ceiling of the detached garage and that the HVAC system was non-functional. See **Exhibit "C"**.

76. On or about <u>March 16, 2019</u>, Plaintiffs also located numerous areas of mold throughout the entirety of the basement. See **Exhibit "C"**.

77. Plaintiffs immediately hired Affordable Mold Remediation ("**AMR**"). AMR recommended and initiated the removal of carpets, carpet pads, tacking strips and flood cuts to the drywall in both the basement and unoccupied apartment above the detached garage. During the initial remediation process, AMR located additional sources of mold in the finished basement at points in the walls higher than the flood cuts (i.e. at heights greater than 12") and in the crawl space.

78. AMR recommended Plaintiffs cease remediation in favor of a complete demolition of both the basement and unoccupied apartment above the detached garage. Plaintiffs contracted with AMR to complete the work in the unoccupied apartment above the detached garage only.

79. On or about <u>March 17, 2019</u>, Plaintiffs' son's pediatrician confirmed that his physical complaints were the direct result of his exposure to mold and Plaintiffs sought additional guidance for purposes of diagnosing the source of water intrusion into the basement and to create a remediation plan to address the mold growth.

80. Plaintiffs contracted with Ronald Tiberi P.E ("**Engineer**"), FSL Associates, Inc ("**FSL**") and Richard J. Robitaille ("**Contracor**") to coordinate and complete exploratory digging, mold testing/mold assessments and remediation and repairs at the Property.

81. FSL's *Report* documents the results of its investigations regarding ". . . concerns raised . . . due to previous mold remediation activities in the Property basement space and exterior drainage concerns . . ." inclusive of observations of efflorescence on the exposed foundation walls.

82. Contemporaneously, FSL collected air sample and surface tape-lift samples for laboratory analysis of mold by Hayes Microbial Consulting. FSL noted Hayes' testing confirmed that "**.** . . based on the analytical results, there is likely active growth detected in tape lift samples T-2 (Aspergillus/Penicillium) and T-3 (Cladiosporium) . . ."

83. Plaintiffs' identification, repair and remediation of defective conditions at the Property, including but not limited to burst pipes, improper foundation water proofing, an abandoned and buried in-ground pool and a significant presence of mold in the unoccupied apartment

above the detached garage and in the finished basement, has cost Plaintiffs in excess of $164,923.61.

84. The physical conditions discovered by Plaintiff did not conform to Coldwell's and Piazza's prior representations concerning the physical conditions of the Property (generally) (see ¶ 34., ¶ 38., ¶ 40. through ¶ 44., ¶ 50., ¶ 54., ¶ 58. and **Exhibit "B"**) and purported plumbing repairs completed in and to the unoccupied apartment over the detached garage and in the basement, after execution of the *P&S* (specifically) (see ¶ 59., ¶ 65. through ¶ 67.).

85. On July 1, 2020, Plaintiffs caused to be served on all Defendants a *Demand For Relief Pursuant To M.G.L. c. 93A* (the "**Demand**"). A true and accurate copy of the Demand (without exhibits) is attached hereto, made a part hereof and marked **Exhibit "D"**.

86. On or about July 30, 2020, Plaintiffs' undersigned counsel received correspondence from counsel for Coldwell purporting to respond to the *Demand*. A true and accurate copy of Coldwell's correspondence is attached hereto, made a part hereof and marked **Exhibit "E"**.

**D. FACTS RELEVANT TO PLAINTIFFS' CLAIMS PURSUANT TO SECTIONS 523 AND 727 OF THE UNITED STATES BANKRUPTCY CODE**

87. On July 8, 2020, Plaintiffs received notice that Debtors filed a petition seeking relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division under the name and style: In re Paul J. and Hsueh Mei Folkman, Docket No. 20-40864-btr-7.

88. Debtors fail to disclose any executory contract in connection with 1013 Royal Oaks Drive, McKinney, Tx 75072 (the "**Debtors' Residence**") (See Schedule G) or an ownership interest in the Debtor's Residence (See Schedule A/B).

89. Debtors' *Amended Voluntary* Petition, specifically Debtors' Official Form 107 *Statement Of Financial Affairs*, fails to disclose that until November 30, 2018, Lee had an ownership interest in the Debtor's Residence and that she conveyed said interest to William A. Lee.

90. The sole interest in real property listed on Schedule A/B is the Debtors' one-sixth (1/6) interest in Center Street Schoolhouse, LLC, the entity at issue in the Trustee's *Motion for Authority to Sell 1/6th Membership Interest in Center Street Schoolhouse, LLC* for which the Debtors represent the interest to be valued at $32,000.00 (See Schedule A/B).

91. Center Street Schoolhouse, LLC is in the same line of business as the Debtors, individually and Folkman Development Corporation, "Real Estate Development and Management".

92. Center Street Schoolhouse, LLC purchased 147-153 Center Street, Middleborough, MA in 2004 for $429,000.00 and sold off 147 Center Street, Middleborough, MA in 2017 for 125,000.00.

93. Center Street Schoolhouse, LLC still owns the property known and numbered 151-153 Center Street, Middleborough, MA (the "**Rental Property**"), a six (6) unit apartment building with two (2) commercial and four (4) residential spaces.

94. On November 4, 2019, Folkman & Zola, in consideration of $619,900.00, conveyed to Robert J. Shaughnessy, Jr. and Stephanie M. Shaughnessy with an address of 23 Maddy Lane, North Attleboro, Massachusetts 02760 the land in North Attleboro, Bristol County, Massachusetts known as "Lot 8" and so described by *Quitclaim Deed* recorded with Bristol County North Registry of Deeds in Book 25492, Page 249.

95. On November 19, 2019, Folkman & Zola, in consideration of $573,000.00, conveyed to Rama Chandra Rao Mushini and Chellaboina Bharathi Devi with an address of 37 Maddy Lane, North Attleboro, Massachusetts 02760 the land in North Attleboro, Bristol County,

Massachusetts known as "Lot 7" and so described by *Quitclaim Deed* recorded with Northern Bristol County Registry of Deeds in Book 25527, Page 192.

96. On <u>June 11, 2020</u>, Folkman & Zola, in consideration of $779,900.00, conveyed to Julie Lankiewicz and David Parsons with an address of 12 Baron Drive, North Easton, Massachusetts 02356, the land in Easton, Bristol County, Massachusetts known as "Lot 23" and so described by *Quitclaim Deed* recorded with Bristol County North Registry of Deeds in Book 26012, Page 156.

97. Folkman & Zola is a Massachusetts corporation with a Principal Office located at 125 High Street #10, Mansfield, Massachusetts 02048 and a Registered Agent, Jay B Zola, located at 200 Chauncy Street, Unit 200C, Mansfield, Massachusetts 02048.

98. Debtors' *Amended Voluntary* Petition, specifically Debtors' Official Form 107 *Statement Of Financial Affairs*, fails to disclose Folkman's ownership interest in Folkman & Zola.

99. Debtor's bankruptcy *Schedules* and *Statement Of Financial Affairs*, sworn to under oath and penalties of perjury, are willfully and intentionally incomplete, inaccurate, false, materially misleading and contain numerous willful and intentional omissions of significant and material property and transactions.

## III.  <u>CAUSES OF ACTION</u>[1]

### COUNT ONE
### (Debtors only)
### OBJECTION TO DISCHARGE OF PLAINTIFFS' CLAIMS AGAINST DEBTORS BASED UPON FALSE PRETENSES, FALSE REPRESENTATIONS, AND ACTUAL FRAUD – 11 U.S.C. § 527(a)(2)

100.     Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 99 as if fully set forth herein.

---

[1] Subject to and pursuant to a reservation of all rights, Plaintiffs have excluded from this *Amended Complaint*, on account of this Honorable Court's *Order* dated March 10, 2022, Count Eight and Count Fourteen of the original *Complaint* (<u>see</u> *Order* at pg. 11, 17-18, 25-26).

101.     Plaintiffs have suffered loss and damage as the direct and proximate result of Debtors' false representations, material representations, false pretenses, omission of material facts and actual fraud. Plaintiffs assert that Debtors' fraud in connection with Plaintiffs' purchase of the Property from Debtors constitutes an exception to discharge pursuant to 11 U.S.C. § 523(a)(2). Plaintiffs object to the discharge of their claims against Debtors under Section 523(a)(2)(A) of the Bankruptcy Code because such claims are for money, property, services, or an extension of credit that Debtor obtained through false pretenses, false representations, or actual fraud.

## COUNT TWO
### (Debtors only)
### OBJECTION TO DISCHARGE ON ACCOUNT OF INTENTIONAL FRAUDULENT TRANSFERS, REMOVAL, DESTRUCTION, OR CONCEALMENT OF PROPERTY MADE WITHIN ONE YEAR PRIOR TO AND SUBSEQUENT TO PETITION DATE
### 11 U.S.C. § 727(a)(2)

102.     Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 101 as if fully set forth herein.

103.     By reason of the foregoing and other actions and conduct of Debtors, Debtors, with intent to delay, hinder, or defraud Plaintiff and other creditors and officers of Debtors' bankruptcy estate, transferred, removed, destroyed or concealed, or has permitted to be transferred, removed, destroyed or concealed, property of Debtors within one year prior to the Petition Date, including without limitation, the transfer of Debtors' interests in the Debtors' Residence, Debtors' interest in CFL Development LLC and Debtors' interest in Folkman & Zola. To the extent that Debtors may have made one or more fraudulent transfers with actual intent to hinder, delay and defraud their creditors more than one year prior to the Petition Date, Debtors' discharge should still be denied under the "continuing concealment doctrine" established by the United States Court of Appeals for the Fifth Circuit in Thibodeaux v. Olivier (In re Olivier, 819 F.2d 550, 553 (5th Cir. 1987).

104. By reason of the foregoing and other actions and conduct of Debtors, with intent to delay, hinder, or defraud Plaintiffs and other creditors and officers of Debtors' bankruptcy estates, transferred, removed, destroyed or concealed, or has permitted to be transferred, removed, destroyed or concealed, property of Debtors' bankruptcy estate subsequent to the Petition Date, including, without limitation, real property sold by Folkman & Zola in which Debtors have an undisclosed interest.

## COUNT THREE
### (Debtors only)
### OBJECTION TO DISCHARGE ON ACCOUNT OF UNJUSTIFIED FAILURE TO KEEP, PRESERVE, AND MAINTAIN ADEQUAE BOOKS AND RECORDS
### 11 U.S.C. § 727(a)(3)

105. Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 104 as if fully set forth herein.

106. By reason of the foregoing and other conduct and actions of Debtors, Debtors have concealed, destroyed, falsified or failed to keep and preserve any recorded information, including books, documents, records and papers from which Debtors' financial condition or business transactions might be ascertained, including, without limitation, books, documents, records and papers relating to alleged purchases made for the benefit of Debtors through Brookdale's vendor accounts, debts paid by Brookdale on Debtors' behalf, Debtors' interest in CFL Development LLC and Debtors' interest in Folkman & Zola.

## COUNT FOUR
### (Debtors only)
### OBJECTION TO DISCHARGE ON ACCOUNT OF FALSE OATHS AND FALSE CLAIMS
### 11 U.S.C. § 727(a)(4)

107. Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 106 as if fully set forth herein.

108. By reason of the foregoing and other actions and conduct of Debtors, in connection with their bankruptcy case, Debtors knowingly and fraudulently made a false oath or

account, including, without limitation, filing materially false and misleading bankruptcy schedules and statement of financial affairs; and, upon information and belief, giving false testimony under oath during the meeting of creditors in this case.

109.     By reason of the foregoing and other actions and conduct of Debtors, in connection with their bankruptcy case, Debtors knowingly and fraudulently presented or under reported their income and/or failed to disclose additional assets and ownership interests in real and personal property.

**COUNT FIVE**
**(Debtors only)**
**OBJECTION TO DISCHARGE ON ACCOUNT OF FAILURE TO EXPLAIN LOSS OF ASSETS OR DEFICIENCY OF ASSETS TO MEET DEBTORS' LIABILITIES**
**11 U.S.C. § 727(a)(5)**

110.     Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 109 as if fully set forth herein.

111.     By reason of the foregoing and other actions and conduct of Debtors, Debtors have failed to satisfactorily explain any loss of assets or deficiency of their assets to meet Debtors' obligations, including, without limitation, Debtors' failure to explain their use and disposition of $450,000.00 that Debtors directly or indirectly received as proceeds from the sale of the Property to Plaintiffs in February 2019.

**AMENDED COUNT SIX**
**(Formerly Count Eighteen)**
**(The Debtor Defendants only)**
**CIVIL CONSPIRACY**

112.     Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 111 as if fully set forth herein.

113.     The Debtor Defendants entered a conspiracy with other third-parties to lure Plaintiffs into purchasing the Property through coordinated efforts to misrepresent and omit material facts and circumstances related to the physical conditions and other terms of sale of the Property, including but not limited to the existence of an alleged express one-year

warranty, as well as the quality, scope and sufficiency of renovations (generally) and plumbing repairs completed <u>after</u> execution of the P&S (specifically).

114.     And, third-parties knowingly provided substantial assistance and encouragement to the Debtor Defendants, aiding and abetting by the misrepresentation and omission of material facts and circumstances related to the physical conditions, and other terms of sale of the Property, including but not limited to acts complained of herein at ¶ 32 through ¶ 67 (the "**Coldwell Acts**"), ¶ 72 through ¶ 76 (the "**Proof of False Statements**") and ¶ 84 through ¶ 86 (the "**Coldwell Damages**").

115.     The Debtor Defendants exerted power over and coerced Plaintiffs into purchasing the Property through the withholding and misrepresentation of material facts objectively relevant to the purchase of the Property by Plaintiffs; and, as a direct and proximate result and consequence, Plaintiffs are damaged.

**AMENDED COUNT SEVEN**
**(Formerly Count Six)**
**(Defendants)**
**<u>FRAUD IN THE INDUCEMENT</u>**

116.     Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 115 as if fully set forth herein.

117.     As to Coldwell, specifically, Plaintiffs repeat, reallege and re-aver ¶ 32 through ¶ 35 (the "**Who**") and ¶ 36 through ¶ 67 (the "**What, Where and When**") of the Coldwell Acts, the Proof of False Statements and the Coldwell Damages, as if fully set forth herein.

118.     By reason thereof and other actions and conduct of Defendants, Defendants misrepresented, or omitted, material facts and circumstances related to the physical conditions of the Property, and other terms of sale, including but not limited to, the conditions and terms specifically referenced in ¶ 84, above.

119.    Defendants' misrepresentations and omissions, including but not limited to, as stated in the Who and the What, Where and When of the Coldwell Acts, the Proof of False Statements and the Coldwell Damages, above, created a false impression as to the risks, duties and obligations related to Plaintiffs' purchase of the Property; and, but for Defendants' misrepresentations and omissions, Plaintiffs would not have acted in the same manner in connection with Plaintiffs' purchase of the Property; and, as a direct and proximate result and consequence, Plaintiffs are damaged.

**AMENDED COUNT EIGHT**
**(Formerly Count Seven)**
**(Defendants)**
**<u>FRAUD</u>**

120.    Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 119 as if fully set forth herein.

121.    As to Coldwell, specifically, Plaintiffs repeat, reallege and re-aver the Who and the What, Where and When of the Coldwell Acts, the Proof of False Statements and the Coldwell Damages, as if fully set forth herein.

122.    By reason thereof and other actions and conduct of Defendants, Defendants misrepresented, or omitted, material facts and circumstances related to the physical conditions of the Property, and other terms of sale, including but not limited to, the terms and conditions of sale specifically referenced in ¶ 84, above.

123.    Plaintiffs reasonably and justifiably relied on Defendants' representations and omissions to their detriment; and, as a direct and proximate result and consequence, Plaintiffs are damaged.

**AMENDED COUNT NINE**
**(The Debtor Defendants only)**
**<u>BREACH OF CONTRACT</u>**

124.    Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 123 as if fully set forth herein

125.     Supported by valid monetary consideration in the amount of $782,500.00, Plaintiffs executed a contract with Defendants to purchase the Property under and pursuant to certain terms and conditions in the *P&S* and Plaintiffs performed their obligations thereunder (see ¶ 56).

126.     Before and after execution of the *P&S*, Defendants made oral representations concerning the physical conditions of the Property, in the context of construction and recent renovations and repairs at and to the Property, on which Plaintiffs reasonably and justifiably relied.

127.     By reason of the foregoing and other actions and conduct, the Debtor Defendants, individually, and jointly and severally, owed Plaintiffs contractual duties, including but not limited to, those expressly stated under the *P&S*, and implied-in-fact, as arising from construction, renovations, and repairs to and at the Property. More specifically, to disclose known latent defects and to reasonably represent and not omit facts or circumstances material to Plaintiffs due diligence in connection with the physical conditions of the Property, and other terms of the sale.

128.     By reason of the foregoing and other actions and conduct of Defendants, the Debtor Defendants breached the *P&S* and other contracts, implied-in-fact, by failing to deliver the Property to Plaintiffs, in accordance and in conformity with, all terms and conditions of said contract(s), representations and applicable law; and, as a direct and proximate result and consequence, Plaintiffs are damaged.

### AMENDED COUNT TEN
### (The Debtor Defendants only)
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

129.     Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 128 as if fully set forth herein

130.     By reason of the foregoing and other actions and conduct, the Debtor Defendants, individually, and jointly and severally, owed Plaintiffs contractual duties, including but not limited to, those expressly stated under the *P&S*, and implied-in-fact, as arising from construction, renovations, and repairs to and at the Property. More specifically, to disclose known latent defects and to reasonably represent and not omit facts or circumstances material to Plaintiffs due diligence in connection with the physical conditions of the Property, and other terms of the sale.

131.     By reason of the foregoing and other actions and conduct of Defendants, Defendants failed to act in good faith as it relates to the *P&S* and other express contracts, as well as to those implied-in-fact, on account of Defendants' failure to deliver the Property to Plaintiffs, in accordance and in conformity with, all terms and conditions of said contract(s), representations and applicable law; and, as a direct and proximate result and consequence, Plaintiffs are damaged.

### AMENDED COUNT ELEVEN
### (The Debtor Defendants only)
### BREACH OF THE IMPLIED WARRANTY OF HABITABILITY

132.     Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 131 as if fully set forth herein

133.     By reason of the foregoing and other actions and conduct of Defendants, Plaintiffs purchased the Property, a "'**COMPLETELY RENOVATED**'" single-family home, from and in justifiable reliance on the representations and warranties of self-described real estate developers, home builders and real estate professionals.

134.     By reason of the foregoing and other actions and conduct of Defendants, the Property contained numerous latent defects that did not manifest their existence until after

Plaintiffs' purchase of the Property, including but not limited to, faulty repair and replacement of plumbing facilities in the "'**COMPLETELY RENOVATED**'" Property.

135.     By reason of the foregoing and other actions and conduct of Defendants, the Debtor Defendants are liable for the numerous latent defects which impaired the health, safety and well-being of Plaintiffs and their children.

**AMENDED COUNT TWELVE**
**(The Debtor Defendants only)**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

136.     Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 135 as if fully set forth herein

137.     By reason of the foregoing and other actions and conduct of Defendants, the Debtor Defendants knew or should have known that failing to make repairs, making repairs with substandard workmanship and/or materials and making statements and/or omissions related to the scope and quality of said repairs (specifically) and/or the physical conditions of the Property (generally), were extreme, outrageous and so severe that they would foreseeably and reasonably result in emotional distress to Plaintiffs and Plaintiffs' children; and, as a direct and proximate result and consequence, Plaintiffs are damaged.

**AMENDED COUNT THIRTEEN**
**(Defendants)**
**UNJUST ENRICHMENT**

138.     Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 137 as if fully set forth herein

139.     As to Coldwell, specifically, Plaintiffs repeat, reallege and re-aver the Who and the What, Where and When of the Coldwell Acts, the Proof of False Statements and the Coldwell Damages, as if fully set forth herein.

140.     By reason thereof and other actions and conduct of Defendants, Defendants misrepresented, or omitted, material facts and circumstances related to the physical

conditions of the Property, including but not limited to, the What, Where and When of the Coldwell Acts, the Proof of False Statements, and other terms of sale, including but not limited to those specifically referenced in ¶ 84, above.

141.     By reason of the foregoing and other actions and conduct of Defendants, Plaintiffs contracted to purchase the Property for $782,500.00 of which Defendants received net proceeds in the amount of $450,000.00, and Coldwell, gross proceeds equal to 2.5% of the sale price of the Property.

142.     By reason of the foregoing and other actions and conduct of Defendants, Defendants received consideration far in excess of what is fundamentally fair, just and in good conscience under the particular facts and circumstances, including but not limited to, the nature and scope of repairs required to plumbing facilities and improper foundation waterproofing; and, as a direct and proximate result and consequence, Plaintiffs have been deprived of the reasonably anticipated benefits of their bargain with Defendants, in an amount equal to the difference between the fair market value of the Property, as warranted, minus the value of the Property in a defective condition (actual damages). See **Exhibit "C"**.

**AMENDED COUNT FOURTEEN**
**(Defendants)**
**<u>NEGLIGENCE</u>**

143.     Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 142 as if fully set forth herein

144.     As to Coldwell, specifically, Plaintiffs repeat, reallege and re-aver the Who and the What, Where and When of the Coldwell Acts, the Proof of False Statements and the Coldwell Damages, as if fully set forth herein.

145.     Defendants owed Plaintiffs various duties, both prior to and surviving sale and transfer of ownership to Plaintiffs, arising out of their construction, renovation, repair, and marketing of the Property.

146.     By reason of the foregoing and other actions and conduct, Defendants constructed, renovated, and repaired the Property using defective and improper methods, designs, materials, and workmanship in breach of duties owed to Plaintiffs; and, as a direct and proximate result and consequence, Plaintiffs are damaged.

### AMENDED COUNT FIFTEEN
### (Defendants)
### NEGLIGENT MISREPRESENTATION

147.     Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 146 as if fully set forth herein.

148.     As to Coldwell, specifically, Plaintiffs repeat, reallege and re-aver the Who and the What, Where and When of the Coldwell Acts, the Proof of False Statements and the Coldwell Damages, as if fully set forth herein.

149.     Defendants owed Plaintiffs the duty to reasonably represent the physical conditions of the Property while marketing and advertising the Property for sale.

150.     By reason of the foregoing and other actions and conduct of Defendants, in the course of Defendants' business, profession or employment, to maintain, manage and sell the Property, Defendants, without reasonable care or competence, made false and misleading representations and omissions to Plaintiffs, on which Plaintiffs reasonably relied to their detriment; and, as a direct and proximate result and consequence, Plaintiffs are damaged.

### AMENDED COUNT SIXTEEN
### (Defendants)
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

151.    Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 150 as if fully set forth herein.

152.    As to Coldwell, specifically, Plaintiffs repeat, reallege and re-aver the Who and the What, Where and When of the Coldwell Acts, the Proof of False Statements and the Coldwell Damages, as if fully set forth herein.

153.    Defendants owed Plaintiffs various duties, both prior to and surviving sale and transfer of ownership to Plaintiffs, arising out of their construction, renovation, repair, and marketing of the Property.

154.    By reason of the foregoing and other actions and conduct of Defendants, in the course of Defendants' business, profession, or employment to maintain, manage and sell the Property, Defendants, constructed, renovated, and repaired the Property using defective and improper methods, designs, materials, and workmanship (including but not limited to, those specifically referenced in ¶ 84, above), in breach of duties owed to Plaintiffs; and, without reasonable care or competence, made false and misleading representations and omissions to Plaintiffs (including but not limited to, as stated in the Who and the What, Where and When of the Coldwell Acts), on which Plaintiffs reasonably relied to their detriment; and, as a direct and proximate result and consequence, Plaintiffs experienced an objective manifestation of symptomatology from emotional distress.

**AMENDED COUNT SEVENTEEN**
**(Formerly Count Nineteen)**
**(Defendants)**
**UNFAIR AND DECEPTIVE ACTS IN TRADE OR COMMERCE**
**M.G.L. c. 93A, § 9**

155.    Plaintiffs repeat, reallege and re-aver ¶ 1 through ¶ 154 as if fully set forth herein.

156.     As to Coldwell, specifically, Plaintiffs repeat, reallege and re-aver the Who and the What, Where and When of the Coldwell Acts, the Proof of False Statements and the Coldwell Damages, as if fully set forth herein.

157.     At all times relevant hereto, Defendants were in the business, profession and/or trade of developing, managing, selling, buying, renting and/or renovating or constructing real property pursuant to licenses, validly held or not, issued by respective regulatory agencies governing such conduct within the Commonwealth of Massachusetts.

158.     By reason of the foregoing and other actions and conduct of Defendants, in the course of Defendants' business, profession, or employment to maintain, manage and sell the Property, Defendants, constructed, renovated, and repaired the Property using defective and improper methods, designs, materials, and workmanship (including but not limited to, those specifically referenced in ¶ 84, above), in breach of duties owed to Plaintiffs; and, without reasonable care or competence, made false and misleading representations and omissions to Plaintiffs (including but not limited to, as stated in the Who and the What, Where and When of the Coldwell Acts), on which Plaintiffs reasonably relied to their detriment. See **Exhibit "C"**.

159.     By reason of the foregoing and other actions and conduct of Defendants in connection with management, maintenance, construction, marketing and sale of the Property, Defendants are in violation of, including without limitation, Massachusetts General Law c.112, §87RR, 254 Code of Massachusetts Regulations ("C.M.R.") 3.00(3), (6), (9)(a) and (b), 14(b), (e) and (f) and 940 C.M.R. 3.01, 3.03(1) and (7), 3.05(1), 3.08(2) and 3.16(2) and (3).

160.     By reason of the foregoing and other actions and conduct of Defendants, Defendants knew or should have known that their actions constituted unfair methods of competition or unfair and deceptive acts or practices in the conduct of trade or commerce; and, as a direct and proximate result and consequence, Plaintiffs are damaged.

161.     On or about July 1, 2020, Plaintiffs caused the Demand to be served upon Defendants and Coldwell. See **Exhibit "D"**.

162.     On or about July 30, 2020, Coldwell caused correspondence to be served upon undersigned counsel for Plaintiffs. See **Exhibit "E"**.

163.     As of the date of this *Amended Complaint*, the Debtor Defendants have not provided a written response to the *Demand*.

## IV.    <u>JURY TRIAL</u>

164.     Plaintiffs repeat, reallege and re-aver ¶ 1 Through ¶ 163 as if fully set forth herein.

165.     Plaintiffs request a trial by jury on all matters so triable.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants and respectfully request that this Honorable Court:

1.     <u>**ENTER**</u> Judgment in favor of Plaintiffs on all claims for relief;

2.     <u>**DECLARE**</u> that Debtors' debt to Plaintiffs is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code (COUNT ONE);

3.     <u>**DECLARE**</u> that Defendants committed unfair and deceptive practices in violation of Massachusetts General Laws c. 93A, § 9 (COUNT NINETEEN);

4.     <u>**DENY**</u> Debtors' discharge pursuant to 11 U.S.C. § 727 (a)(2), (3), (4) and (5);

5.     <u>**AWARD**</u> Plaintiffs damages on all claims for relief in an amount no less than $250,000.00; and,

6.  __AWARD__ Plaintiffs reasonable attorneys' fees, costs of suit and such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,

Plaintiffs,

JEFFREY BLANCHARD and
JANINE BLANCHARD,

By their attorneys,

/s/ Michael G. Franzoi
Michael G. Franzoi (BBO #685473)
Law Office of Michael G. Franzoi
P.O. Box 290569
Boston, MA 02472
P. 856-498-1748
Date: March 31, 2022
E. mfranzoi@franzoilegal.com

/s/ John P. Lewis
John P. Lewis, Jr.
Texas State Bar No. 12294400
Hayward, PLLC
10501 N. Central Expressway, Suite 106
Dallas, Texas 75231
Telephone: (972) 755-7106
Date: March 31, 2022
Email: jplewisjr@haywardfirm.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 31, 2022, a true and correct copy of the foregoing *Amended Complaint* with **Exhibit "A"** through **Exhibit "E"** was caused to be served on Christopher Moser, Esq. and Faizan (Frank) S. Patel, Esq., Attorneys for the Chapter 7 Trustee, William J. Collins, Esq., Attorney for Debtors, Timothy Davis, Esq. and Derek Carson, Esq., Attorneys for Coldwell *via* the Court's ECF system, email and in accordance with Rule 7004 of the Bankruptcy Code.

/s/ Michael G. Franzoi
Michael G. Franzoi